THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS STUFFLEBEAN, Defendant-Appellant.

(No. 74-4; ▮▮▮▮▮▮▮▮▮▮

Fifth District—December 24, 1974.

Robert Farrell, of Mt. Vernon, and Steven Clark, of Chicago, both of State Appellate Defender's Office, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Raymond F. Buckley, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal by the defendant, Thomas Edward Stufflebean, from a judgment of conviction entered, on a jury verdict of guilty, by the circuit court of Madison County for the offense of robbery and the imposition of a sentence of not less than 2 years nor more than 6 years in the penitentiary.

In the instant appeal the defendant does not contend that he was not proven guilty beyond a reasonable doubt, rather he contends that it "cannot be said beyond a reasonable doubt that the jury's knowledge of the defendant's prior conviction did not contribute to its verdict." Nevertheless, a brief summary of the evidence presented at the defendant's trial is necessary before evaluation of the defendant's contention that the trial court erred in admitting evidence of the defendant's 1967 Missouri conviction for theft from a person and in allowing reference to it by the State in closing argument.

A review of the uncontroverted facts reveals that the defendant requested the bartender at Hook's Tavern to call for a Yellow Cab around 11 P.M. on May 17, 1973; John Fausz was dispatched to pick up the defendant; after a number of intervening stops the cab arrived at 1206 Grand in Madison; after Fausz and defendant entered the building at that address, through the basement, the defendant tied and gagged Fausz; the defendant then drove away in the cab Fausz had been operating; Mr. Fausz untied himself and notified the police; and the defendant was arrested near the County Road and McKinley Bridge where he had driven to meet another man who had driven to that location in a Ford Fairlane.

The defendant attempted to explain his conduct by testifying that he knew Fausz, by his nickname "Fuzzy," and that the two of them used to hang around together; he and Fausz met on the afternoon of May 17, 1973, and Fausz proposed a "deal" to the defendant; under this "deal" the defendant was to call Fausz that night and have Fausz pick him up in Fausz's cab, they were to go to 1206 Grand where the defendant would tie up Fausz and take Fausz's cab, Fausz would get the insurance money for the cab and pay the defendant $460 the following morning; and the events of the evening of May 17, 1973, were the culmination of this "deal."

Fausz denied that he knew the defendant and further denied that he had proposed or agreed to the plan outlined by the defendant. Edward Goclan, a Madison police officer, testified that when he requested the defendant to produce some identification the defendant said his name was Fausz and pulled out a wallet with identification in the name of Fausz.

The defendant was searched and a wallet with the name of Thomas Stufflebean was found. Officer Goclan testified that $15 or $16 in change was found in one of the defendant's pockets. He also testified that the police report was in error in that it did not reflect that Fausz's wallet was taken from the defendant at the time of the arrest. Charles Mize, a Venice police officer, testified that he had been called to assist in the arrest. Officer Mize stated that he patted down the defendant and felt two wallets in the defendant's back pockets. He also stated that the defendant pulled a wallet out of his pocket and gave it to Officer Goclan, whereupon Officer Goclan asked the defendant "Are you Mr. Fausz?"

The defendant denied that he was in possession of Fausz's wallet and testified that the police added a wallet similar to that identified as Fausz's wallet to what the defendant removed from his pockets at the police station. The defendant also denied that he had identified himself as Fausz at the time of his apprehension.

After the defendant's testimony the State's Attorney presented to the court in chambers "a verified and authenticated copy" of two prior convictions from Missouri, one for theft from the person, the other for assault with intent to kill with malice. The trial court allowed the theft conviction to be introduced, but refused to allow the assault conviction. The defendant objected on the grounds that the theft conviction was "ancient" and that it would only serve to inflame the jury and prejudice the defendant. A cautionary instruction was given admonishing the jury to consider the defendant's prior conviction "only insofar as it may affect his credibility as a witness."

The defense counsel, in closing argument stated:

"\* \* \* Now Mr. Trone [State's Attorney] has given you, ladies and gentlemen of the jury, a look at this man's unfortunate past and his trauma of 1967, a conviction for purse snatching, to which Mr. Stufflebean pleaded guilty.

MR. TRONE: Objection, Your Honor. I don't think that was the record—

MR. WEBER: That's what it was. It was theft from a person, but it was purse snatching. Now let me ask you a question, ladies and gentlemen of the jury, what relevance other than titillating, other than trying to inflame your passion, other than trying to prejudice you against this man, does a '67 to '73—does a seven or eight year old purse snatching record does have in this case? What does it have? Well, it has all the requirements of a true confession sensational attempt to drag you right over the issues of this case. That's what it's brought in for, and I submit that's the only reason

it's all brought in for, because if—credibility—although it's not a perjury conviction—a similar type of taking from people that Mr. Trone wants you to—why did he bring that it? * * *"

Subsequently, the State, in closing argument, stated:

"* * * But he [defendant] isn't the smartest guy in the world, in the first place. The smart guys don't get involved in this stupid stuff. And particular—after having been mixed up once before.

MR. WEBER: I object.

MR. TRONE: Purse snatching. If you'll recall, the Court advised you that it was Theft from the person, and the sentence for that theft from the person was a two year sentence. Does that sound like simple purse snatching?

MR. WEBER: I have made an objection to Mr. Trone's characterization of him having been caught once before. I think it's inflammatory and being precisely the kind of issue that he's trotting out to obscure the facts in this case. I'd like a ruling on that point.

THE COURT: As to it being inflammatory?

MR. WEBER: Sure.

MR. TRONE: Your Honor, he brought up himself—

MR. WEBER: And being improper argument.

THE COURT: Overruled.

MR. TRONE: He brought—there was nothing said in Court or any reference to purse snatching, nor was there any testimony to that. That was theft of the person, which there was a two year sentence given. * * *"

■■ Initially, we must determine whether the defendant's prior conviction for theft was properly admitted. The guidelines for the admission of previous convictions were established in the landmark case of *People v. Montgomery,* 47 Ill.2d 510, 268 N.E.2d 695. Therein our supreme court held proof of prior convictions for purposes of impeachment was to be governed by Rule 609 adopted by the Committe on Rules of Practice and Procedure of the Judicial Conference of the United States. Under the general rule, the credibility of a witness may be impeached by evidence of a prior conviction, except a plea of *nolo contendere,* if such crime, (1) was punishable by death or imprisonment in excess of one year, or (2) involved dishonesty or a false statement regardless of the punishment, unless (3), in either case, the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice. Rule 609 also provides that evidence of conviction is not admissible if a period of more than 10 years

has elapsed since the date of conviction or of the release of the witness from confinement, whichever is the later date.

Since the defendant's previous conviction for theft from a person was punishable by a sentence of 2 years, involved dishonesty, and transpired within the requisite 10-year period, the only issue before us is whether its probative value was "substantially outweighed by the danger of unfair prejudice." According to the Advisory Committee's comments to Rule 609, set forth at length in *Montgomery*, the trial court is given "room for the operation of a sound judicial discretion to play upon the circumstances as they unfold in a particular case." 47 Ill.2d 510, 517, 268 N.E.2d 695, 699.

■■ Our review of the record in the instant case reveals that the trial court did not abuse its discretion. Evaluation of the nature of the prior conviction, the proximity of the prior conviction, the subsequent career of the defendant, and the similarity between the previous offense and the one charged, leads us to the conclusion that the ruling of the trial court concerning the admission of the defendant's prior conviction satisfies the standards set forth in *Montgomery* and is not "substantially outweighed by the danger of unfair prejudice."

■■ We also find no merit in the defendant's argument that references to such conviction in the State's closing argument constituted reversible error. The State is permitted, in closing argument, to comment upon the credibility of the defendant as a witness. (*People v. Hurley*, 10 Ill.App. 3d 74, 77, 293 N.E.2d 341, 343.) A previous conviction is within the scope of the State's commentary on the credibility of the witness, provided evidence of such conviction has been properly admitted. (See *People v. Jones*, 125 Ill.App.2d 168, 260 N.E.2d 58.) When the defense counsel attempts to minimize the effect of the defendant's prior conviction in his closing argument, the State may, of course, respond directly to such remarks provided it does not transcend the scope of the comments advanced by the defense counsel. In any event, in view of the overwhelming evidence of the defendant's guilt, we cannot say that the State's closing argument, much of which was in direct response to the closing argument of the defense counsel, constituted reversible error. See *People v. Stahl*, 26 Ill.2d 403, 186 N.E.2d 349; *People v. Bellamy*, 12 Ill.App.3d 576, 299 N.E.2d 585; *People v. Fox*, 131 Ill.App.2d 604, 264 N.E.2d 502.

Having found the defendant's only contentions without merit, we affirm the judgment of conviction entered by the circuit court of Madison County.

Affirmed.

G. MORAN and CARTER, JJ., concur.